UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNSUK GUARINO

        Plaintiff,

    v.                        **REPORT AND RECOMMENDATION**
                                     **07-CV-1252 (GLS)**

COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.    Introduction

Plaintiff Unsuk Guarino brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB").[1] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

For the reasons set forth below, the Court finds that the Commissioner's decision contains legal error and is not supported by substantial evidence. Therefore, the Court recommends that Plaintiff's Motion for Judgment on the Pleadings be granted in part and Defendant's Cross-Motion for Judgment on the Pleadings be denied.[2]

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated August 14, 2009.
[2] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).

## II.      Background

Plaintiff first applied for DIB on May 5, 1998, alleging an onset date of March 25, 1997 (R. at 433, 435).[3] Plaintiff's application was denied on July 3, 1998 (R. at 405). Plaintiff filed a request for a hearing on January 14, 1999 (R. at 413). The ALJ issued a decision on April 19, 2000, finding Plaintiff not disabled (R. at 24-35). The ALJ's decision became the Commissioner's final decision when Plaintiff's request for review was denied by the Appeals Council on November 29, 2001 (R. at 50-52).

Plaintiff filed a second application for DIB on April 18, 2005, again alleging an onset date of March 25, 1997 (R. at 45, 74). Plaintiff alleges disability due to a pain syndrome, a cervical spine impairment, and headaches. Her application was denied initially on May 23, 2005 (R. at 45). Plaintiff filed a request for a hearing on June 30, 2005 (R. at 60).

On May 23, 2007, Plaintiff appeared before the ALJ (R. at 681). The ALJ considered the case *de novo* and, on July 18, 2007, issued a decision finding Plaintiff not disabled (R. at 11-17). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on November 21, 2007 (R. at 4-7). On November 30, 2007, Plaintiff filed this action.

Based on the entire record, the Court recommends remand because the ALJ failed to consider all relevant probative evidence in his decision.

## III.      Discussion

### A.      Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo*

---

[3] Citations to the underlying administrative record are designated as "R."

whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other

3

words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[4] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520.

**B.    Analysis**

**1.  The Commissioner's Decision**

In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff's prior application was denied on April 19, 2000 (R. at 11); (2) The prior decision finding Plaintiff not disabled "is final and binding" (R. at 11); (3) Plaintiff met the insured status requirements of the Act up through December 31, 2002 (R. at 13); (4) The relevant time period is April 20, 2000, the day after Plaintiff's prior final disability determination, through December 31, 2002 (R. at 11-12); (5) Plaintiff did not engage in substantial

---

[4] This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

gainful activity during the time period in question (R. at 13); (6) Plaintiff's occipital neuralgia was a medically determinable impairment; (7) Plaintiff failed to show that she had a medically determinable neck impairment, cervical spine impairment, or myofascial pain syndrome ("MPS") [5] (R. at 14); (8) Plaintiff did not have a severe impairment or combination of impairments (R. at 15); (9) Plaintiff's complaints were not entirely credible (R. at 15). Ultimately, the ALJ found that Plaintiff was not under a disability at any time through the date of last insured, December 31, 2002 (R. at 17).

### 2. Plaintiff's Claims:

Plaintiff argues that the ALJ's decision is contrary to the applicable legal standards and not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ erred in a) failing to consider certain medical evidence contained in the record; b) assessing Plaintiff's credibility; c) failing to find Plaintiff's cervical spine impairment was severe; d) failing to find Plaintiff met Listing 1.04A; and e) failing to find that Plaintiff was incapable of performing work in the economy.

### a) The ALJ Erred in Failing to Consider All Relevant Probative Evidence

Plaintiff argues that the ALJ erred in failing to consider all the evidence of record. Plaintiff's Brief, pp. 12-18. Defendant argues that the ALJ's findings are supported by substantial evidence. Defendant's Brief, pp. 11-17. Defendant further argues that the ALJ had no obligation to consider medical evidence outside the relevant time period under the doctrine of *res judicata* and any opinions from Plaintiff's treating physicians

---

[5] "Myofascial pain syndrome is a chronic form of muscle pain. The pain of myofascial pain syndrome centers around sensitive points in your muscles called trigger points. The trigger points in your muscles can be painful when touched. And the pain can spread throughout the affected muscle." Mayo Clinic, *Myofascial Pain Syndrome*, *available at* http://www.mayoclinic.com/health/myofascial-pain-syndrome/DS01042/METHOD=print (last visited September 8, 2009).

were properly dismissed. Defendant's Brief, p. 15-17.

The ALJ has an obligation "to consider relevant and probative evidence which is available to him." Lopez v. Sec'y of Dep't of Health & Human Sevs., 728 F.2d 148, 150-51 (2d Cir. 1984). The ALJ failed to discuss much of the evidence of record. The ALJ's failure to consider all the evidence in the record is most noticeable in his finding that Plaintiff's sole medically determinable impairment was her occipital neuralgia (R. at 13).

The ALJ is instructed to consider impairments of which a claimant has complained or the ALJ has received evidence. See 20 C.F.R. § 404.1512 ("We will consider only impairment(s) you say you have or about which we receive evidence."). The "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." "A physical or mental impairment must be established by medical evidence consisting of signs,[6] symptoms,[7] and laboratory findings,[8] not only by your statement of symptoms." 20 C.F.R. § 404.1508 (citations omitted).

In discussing Plaintiff's diagnosis of MPS, the ALJ noted that

[t]he pain management center which administered the claimant's trigger point injections for occipital neuralgia indicates that claimant had myofascial pain syndrome. However, this diagnosis was not confirmed by a rheumatologist and no other physician of record has carried forward this diagnosis. Moreover, the treatment notes from the pain management center do not document trigger points in 11 of 18 areas of the upper and lower torso and extremities, which the American College of Rheumatology denotes as being one of the diagnostic features of myofascial pain syndrome or fibromyalgia. In his January 23, 2001 [independent medical

---

[6] "Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. § 404.1528(b).

[7] "Symptoms are your own description of your physical or mental impairment." 20 C.F.R. § 404.1528(a).

[8] "Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." 20 C.F.R. § 404.1528(c).

examination], Dr. Storrs notes that he found no evidence of myofascial or trigger points. I find that the claimant has failed to satisfy her burden of establishing that she has myofascial pain syndrome

(R. at 14). In his analysis, the ALJ failed to discuss pertinent medical facts lending credence to her diagnosis of MPS.

For example, the ALJ found that the pain management center treating Plaintiff's occipital neuralgia also diagnosed Plaintiff with MPS (R. at 14). While this is true, the record indicates that the original diagnosis was made by Plaintiff's treating physician, Dr. Vidal, an employee of the center, on March 28, 1997 (R. at 478-79). Dr. Vidal saw Plaintiff for an "emergency consult" because of "severe pain in [Plaintiff's] cervical and shoulder areas, bilaterally, with immobility" (R. at 478).

At that time Dr. Vidal found "triggerpoints that are elicited over the trapezius and in the occipital areas, especially on the left side" (R. at 479). According to the Mayo Clinic, trigger points are a diagnostic technique employed to diagnose MPS. Mayo Clinic, *Myofascial Pain Syndrome*, http://www.mayoclinic.com/health/myofascial-pain-syndrome/DS01042/METHOD (last visited September 8, 2009).

Dr. Vidal also found that Plaintiff "[wa]s unable to move her head, neck, shoulders - and in particular, her left arm" (R. at 478). This diagnosis of MPS was repeated again, on April 21, 1997, by Barbara O'Brian, Dr. Vidal's registered nurse[9] (R. at 478, 484).

Plaintiff began receiving trigger point and occipital nerve block injections with Dr.

---

[9] Dr. Vidal's original diagnosis was acute MPS (R. at 479). Acute is defined as "having a short and relatively severe course." *Dorland's Illustrated Medical Dictionary*, 25 (31st ed. 2007). However, Plaintiff was diagnosed with MPS on April 21, 1997, and acute was not mentioned (R. at 484). Thereafter, Plaintiff's diagnosis of MPS continued throughout the record (R. at 156-280, 305-400, 478-520, 624-47, 658-68).

Vidal on March 28, 1997, the date on which Dr. Vidal first diagnosed Plaintiff with MPS (R. at 478-79). These injections continued through November 10, 2006, documenting a near ten year treatment relationship with Dr. Vidal (R. at 306). Dr. Vidal's diagnosis of MPS continued through Plaintiff's last injection on November 10, 2006 (R. at 156-280, 305-400, 478-520, 624-47, 658-68). The ALJ never once mentioned Dr. Vidal in his decision. By ignoring Dr. Vidal the ALJ failed to properly consider Plaintiff's ten year diagnosis of MPS.

The ALJ also dismissed Plaintiff's diagnosis of MPS because "treatment notes from the pain management center do not document trigger points in 11 of 18 areas of the upper and lower torso and extremities, which the American College of Rheumatology denotes as being one of the diagnostic features of myofascial pain syndrome or fibromyalgia" (R. at 14). The ALJ's statement smacks of "set[ting] his own expertise against that of a physician who [submitted an opinion to or] testified before him." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (citations omitted).

Moreover, the ALJ failed to consider the opinions set forth in Dr. Van Eenenaam's medical source statement ("MSS"). The ALJ noted that "there are no medical assessments of record from a treating physician setting forth a detailed function by function assessment of the claimant's abilities to perform the physical demands of work" (R. at 17). While this is true, Dr. Van Eenenaam completed an MSS on August 10, 1999, a mere eight months prior to the time period at issue here (R. at 649-57). Dr. Van Eenenaam diagnosed Plaintiff with chronic pain syndrome in her right upper

extremity with a questionable diagnosis of reflex sympathetic dystrophy ("RSD")[10] (R. at 649). Dr. Van Eenenaam opined that Plaintiff could frequently lift up to ten pounds, occasionally lift up to twenty pounds, and occasionally carry up to ten pounds, but had no limitations to sitting, standing, or walking (R. at 650-51). Dr. Van Eenenaam also stated that Plaintiff could only occasionally perform simple grasping and fine manipulation with her right hand (R. at 651). Dr. Van Eenenaam opined that Plaintiff could never climb crawl, reach, push, or pull, and occasionally balance, stoop, crouch, kneel, handle, and feel (R. at 652).

The ALJ failed to discuss and state the weight he granted to these opinions. Indeed, the ALJ only mentioned Dr. Van Eenenaam twice in his decision: first to note the doctor's opinion that there was no orthopedic issue; and second to note that Dr. Van Eenenaam's ordered an MRI but the results were not in the record (R. at 14). Both of the ALJ's statements were found in Dr. Van Eenenaam's treatment notes from January 2001. (R. at 14, 155). Notably, the ALJ failed to acknowledge Dr. Van Eenenaam's January 2001 finding that Plaintiff's trapezius muscle was markedly tender (R. at 155). This finding appears to support Dr. Vidal's March 28, 1997 findings of trigger points over the trapezius muscle and diagnosis of MPS (R. at 478-79).

Furthermore, as Plaintiff argues, the ALJ failed to consider relevant evidence in determining whether Plaintiff's herniated disc in her cervical spine was a medically

---

[10] Dr. Van Eenenaam's MSS is somewhat unclear as to whether he was questioning a diagnosis of chronic pain syndrome or RSD (R. at 649). However, based on his treatment notes, the Court assumes Dr. Van Eenenaam was questioning Plaintiff's RSD. See (R. at 672) (noting, on December 15, 1999, that he "still feel[s] at this time that this is a chronic regional right upper extremity pain syndrome"). RSD "is a chronic pain syndrome . . . . The most common acute clinical manifestations include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma. Later, spontaneously occurring pain may be associated with abnormalities in the affected region involving the skin, subcutaneous tissue, and bone." SSR 03-2p, 2003 WL 223991177, at *1 (S.S.A.)

determinable impairment during the time period in question (R. at 14). The ALJ noted that Plaintiff:

> was found to have a herniated disc of the cervical spine in 2005, for which she underwent a discectomy and decompression of the nerve roots on October 18, 2005. However, there is no evidence from diagnostic imaging that the claimant had a herniated cervical spine disc from prior to the December 31, 2002 date last insured. The attempt by claimant and her representative to relate the 2005 herniated disc to the period prior to the date last insured is not supported by the medical evidence of record

(R. at 14) (citations omitted).

As with Dr. Vidal, the ALJ failed to acknowledge any opinions from Plaintiff's treating surgeon, Dr. Krawchenko. On August 22, 2005, Dr. Krawchenko opined that "[t]he difficulty of a great outcome or a significant improvement is to me the extent of injury, the length of it in 1994, over 10 years, and surgery may or may not help her at this point" (R. at 290). Dr. Krawchenko also referenced an "MR scan that showed a disc extrusion at C5-6 on 5/10/05." Id. Dr. Krawchenko diagnosed Plaintiff with "cervical radiculopathy secondary to disc herniation C5-6" (R. at 282). The ALJ ignored Dr. Krawchenko's diagnosis and opinion that Plaintiff's current cervical spine impairment was related to her 1995 work injury (R. at 290). Plaintiff underwent spinal surgery with Dr. Krawchenko on October 18, 2005, despite Dr. Krawchenko's belief that there would be a mere "50/50 chance" of success (R. at 282-84, 290-91).

Moreover, Dr. Krawchenko's retrospective opinion is supported by the opinion of Plaintiff's treating physician, Dr. Vidal. Plaintiff submitted a June 12, 2007, letter to the Appeals Council from Dr. Vidal to Plaintiff's attorney (R. at 7, 679). This letter became part of the record when the Appeals Council denied review on November 21, 2007 (R. at 4-7). See Perez v. Chater, 77 F.3d 41, 45-46 (2d Cir. 1996) (quoting O'Dell v.

Shalala, 44 F.3d 855, 859 (10th Cir. 1994)) ("[W]hen the Appeals Council denies review

after considering new evidence, the Secretary's final decision 'necessarily includes the

Appeals Council's conclusion that the ALJ's findings remained correct despite the new

evidence.' Accordingly, the administrative record should contain all evidence submitted

before this final decision, including the new evidence that was not before the ALJ."). In

her letter, Dr. Vidal opined that

> [w]ith a reasonable degree of medical certainty, [she] believe[d] that
> [Plaintiff] ha[d] a disc problem since 2002 because of her failure to
> respond to all treatment offered to her in the Pain Management Clinic to a
> reasonable comfortable state. Her ability to do work related activities is
> very limited and therefore, I agree with Dr. Peter VanEenenaam [sic] for
> her to be totally disabled

(R. at 679).

Although neither opinion was formed during the time period to which it refers, an

opinion from a treating physician may not be dismissed simply because it is

retrospective. Dousewicz v. Harris, 646 F.2d 771, 774 (2d Cir. 1981). This is true

because "[a] diagnosis of a claimant's condition may properly be made even several

years after the actual onset of the impairment." Dousewicz, 646 F.2d at 774 (quoting

Stark v. Weinberger, 497 F.2d 1092, 1097 (7th Cir. 1974)). Indeed, unless a treating

physician's retrospective opinion is contradicted by other medical evidence or

"overwhelmingly compelling" non-medical evidence, it is entitled to controlling weight.

Rivera v. Sullivan, 923, F.2d 964, 968-69 (2d Cir. 1991); Wagner v. Sec'y of Health &

Human Servs., 906 F.2d 856, 862 (2d Cir. 1990).

Moreover, the Second Circuit:

> ha[s] observed, repeatedly, that '[E]vidence bearing upon an applicant's
> condition subsequent to the date upon which the earning requirement [

*i.e.,* insured status] was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date.'

Lisa v. Sec'y of Dep't of Health & Human Servs., 940 F.2d 40, 44 (2d Cir. 1991) (citing

Gold v. Secretary of Health, Educ. and Welfare, 463 F.2d 38, 41-42 (2d Cir.1972)

(quoting Carnevale v. Gardner, 393 F.2d 889, 890 (2d Cir.1968)); see also Eiden v.

Secretary of Health, Educ. & Welfare, 616 F.2d 63, 65 (2d Cir.1980)).

The ALJ's failure to consider and appropriately weigh the opinions[11] from Dr. Vidal, Dr. Van Eenenaam, and Dr. Krawchenko constitutes error and necessitates remand. See Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)) ("Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is ground for remand."); Caseto v. Barnhart, 309 F.Supp.2d 435, 444-45 (E.D.N.Y. 2004) (remanding where the ALJ failed to acknowledge the opinions from Plaintiff's treating physicians and failed to state the weight he afforded to those opinions).

Defendant's arguments are unavailing. Defendant first argues that the ALJ was not obligated to consider evidence outside the relevant time period under the doctrine of *res judicata*. Defendant's Brief, p. 15. An ALJ may

refuse to consider any one or more of the issues because -- The doctrine of res judicata applies in that we have made a previous determination or decision under this subpart about your rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action

---

[11] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.970(a)(2), 416.927(a)(2).

20 C.F.R. § 404.957(c), (c)(1). Here, the ALJ properly invoked the doctrine of *res judicata* noting that the previous decision of the ALJ, finding Plaintiff not disabled, was binding on him (R. at 11). See <u>Amato v. Bowen</u>, 739 F.Supp. 108, 111 (E.D.N.Y. 1990) ("The doctrine of *res judicata* is properly applied to deny a benefits claim when the claimant has had a previous disability determination on the same facts and issues, and such determination has become final by either administrative or judicial action."). However, the Court could not find, nor does Defendant cite to, any authority for the proposition that *res judicata* absolves the ALJ of his duty to consider all relevant probative evidence. See <u>Kohler v. Astrue</u>, 546 F.3d 260, 268-69 (2d Cir. 2008) (<u>citing</u> <u>Lopez</u>, 728 F.3d at 150-51 ("We have remanded in other cases where the ALJ has . . . failed to consider relevant probative evidence.").

In sum, the ALJ appears to have used the doctrine of *res judicata* to exclude from his consideration significant pieces of evidence that pre-dated the relevant time period. However, while *res judicata* barred reconsideration of the decision to deny Plaintiff benefits with respect to the earlier time period, it does not follow that evidence from the earlier period was *per se* inadmissible as to the issue of whether Plaintiff was disabled during the relevant time frame. See <u>Groves v. Apfel</u>, 148 F.3d 809, 810 (7th Cir. 1998)( ("[A]lthough the final judgment denying that application was *res judicata*, this did not render evidence submitted in support of the application inadmissible to establish, though only in combination with later evidence, that she had become disabled after the period covered by the first proceeding. *Res judicata* bars attempts to relitigate the same

13

claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994.").

Moreover, the Court notes that the ALJ did consider evidence outside the relevant time period. However, the ALJ's consideration of the evidence, both within and outside of the time period in question, is severely lacking.

Defendant further argues that the opinions of Plaintiff's various treating sources were properly dismissed because they were contrary to substantial evidence in the record and not based on clinical and diagnostic techniques. Defendant's Brief, pp. 15-16. However, because the ALJ failed to weigh the opinions from Plaintiff's treating physicians (Dr. Van Eenenaam, Dr. Krawchenko, and Dr. Vidal) the Court cannot determine whether a dismissal of the opinions would be supported by substantial evidence.

Furthermore, the ALJ concluded that Plaintiff did not have a severe impairment or combination of impairments (R. at 15). Thus, the ALJ ended his analysis at step two of the sequential evaluation. Step two, the severity step, is only used to dismiss *de minimis* claims. If a claimant has more than a slight abnormality the analysis must continue to the third step. See Bowen v. Yuckert, 482 U.S. 137 (1987); Dixon v. Shalala, 54 F.3d 1019, 1030-31 (2d Cir.1995); Coughlin v. Comm'r of Social Security, No. 5:06-CV-497, 2008 WL 2357166, at *11 (N.D.N.Y. June 4, 2008) ("The severity analysis does no more than 'screen out de minimis claims.' If the disability claim rises above the de minimis level, then further analysis is warranted."). However, the ALJ did not address the Commissioner's prior decision, which determined that Plaintiff did have an

impairment or combination of impairments considered "severe" under the Regulations. (T at 34). At a minimum, the ALJ was obligated to address this change in circumstance and set forth an explanation as to why he was reaching a different concluded than that reached by the previous ALJ.

Based on the foregoing, the Court recommends remand in order to allow the ALJ to carefully consider all medical evidence of record, including the letter from Dr. Vidal that was submitted to the Appeals Council.

### b) The ALJ Failed to Fully Evaluate Plaintiff's Credibility

Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility. Plaintiff's Brief, pp. 17-18.

"[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "However, the ALJ is 'not obliged to accept without question the credibility of such subjective evidence.'" Martone v. Apfel, 70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). In analyzing credibility, the ALJ must first determine whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); S.S.R. 96-7p, 1996 WL 374186, at *2. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. S.S.R. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c); Borush, 2008 WL 4186510, at *12. Because "an individual's symptoms can sometimes suggest a greater level of severity of

impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the regulations.[12] 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

If the ALJ finds Plaintiff's pain contentions are not credible, he must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief."   Young v. Astrue, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y. 1987)).

Here, the ALJ completed the two-step process by finding that Plaintiff's "medically determinable impairments could have been reasonably expected to produce the alleged headache symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms and her reported arm symptoms are not entirely credible" (R. at 16).

The ALJ then went on to consider various inconsistencies in Plaintiff's statements and examinations, a "suboptimal effort" on a bronchoprovocation test, and her daily activities (R. at 16-17). The ALJ also noted that Plaintiff's "somewhat consistent earnings record, . . . entitled [her] to some bolstering of her credibility" (R. at 17). However, as argued by Plaintiff, the ALJ failed to consider Plaintiff's long history of pain treatment. Plaintiff's Brief, p. 17. According to SSR 96-7p, "a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other

---

[12] The listed factors are: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements." SSR 96-7p, at 1996 WL 374186, at *7 (S.S.A.).

Plaintiff's extensive history of pain treatment is well documented in the record. Plaintiff underwent numerous trigger point and occipital nerve block injections during her ten year treatment history at the Samaritan Medical Center Pain Management Center (R. at 156-280, 305-400, 478-520, 624-47, 658-68). Plaintiff also engaged in physical therapy from December 1997 through May 1998 (R. at 539-74). On June 20, 1997, requested a TENS[13] unit (R. at 532). Plaintiff has also undergone acupuncture (R. at 533). Moreover, Plaintiff was sent to, and examined by, several consultative specialists including neurologists Dr. Owen (R. at 477); neurologist Dr. Latif (R. at 521-22); orthopedist Dr. Mosher (R. at 578, 591-92); and orthopedist Dr. Wainberg (R. at 614, 615-16). Ultimately, Plaintiff underwent spinal surgery on October 18, 2005, despite being informed by Dr. Krawchenko that there would be a mere "50/50 chance" of success (R. at 290-91).

Given Plaintiff's extensive history of pain treatment, she was entitled to some bolstering of her credibility that the ALJ failed to consider. See Dailey v. Barnhart, 277 F.Supp.2d 226, 239 (W.D.N.Y. 2003) (noting that SSR 96-7p should likely have enhanced Plaintiff's credibility because Plaintiff "has seen a variety of physicians and specialists, has followed her prescribed treatments, has taken her medications . . ., and has even discussed other 'experimental treatments' with [her treating physician]").

---

[13] Transcutaneous electrical nerve stimulation. *Dorland's* at 1905.

Therefore, on remand, the ALJ should consider Plaintiff's long history of pain treatment in his credibility analysis.

### c)  Plaintiff's Subsequent Arguments

Plaintiff further argues that the ALJ erred in i) failing to find Plaintiff's cervical spine impairment was severe; ii) failing to find Plaintiff met Listing 1.04A; and iii) failing to find that Plaintiff was incapable of performing work in the economy.

The ALJ failed to find Plaintiff's cervical spine impairment to be a medically determinable impairment during the time period in question (R. at 13-14). Thus, the ALJ did not engage in a severity analysis of that impairment. Also, the ALJ found that Plaintiff's sole medically determinable impairment to be not severe (R. at 15). Thus, the ALJ ended his five-step analysis at step two. Because the ALJ failed to make findings on any of Plaintiff's subsequent arguments, Plaintiff appears to argue that the Court should continue on with the five-step process and ultimately find Plaintiff disabled. However, it is the role of the ALJ to make sequential findings at every step of the five-step evaluation, until a claimant has been found to be either disabled or not disabled. Berry, 675 F.2d at 467; see also Rosa, 168 F.3d at 77; 20 C.F.R. §§ 416.920, 404.1520. It is then the role of the Court to determine whether the ALJ's findings were supported by substantial evidence and free of legal error.  See Grey, 721 F.2d at 46; Marcus, 615 F.2d at 27. Therefore, the Court will not make findings on the remainder of the five-step process because that is the role of the ALJ.

## IV.   Conclusion

Based on the foregoing, the Court recommends that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in

accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge


DATED:          Syracuse, New York
                December 10, 2009

**ORDER**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby


**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.


**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.


**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);   *Small v.*

19

*Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);   *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge


Syracuse, New York
DATED:     December 10, 2009